IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION
:
v. :
:
HAKEEM PARIS : NO. 11-211

MEMORANDUM

McLaughlin, J. June 27, 2012

Hakeem Paris has been indicted for conspiracy to commit robbery, robbery, attempted robbery, two counts of carrying and using a firearm during a crime of violence, and one count of being a convicted felon in possession of a firearm. These charges arise out of the robbery of Bridesburg Pizza at 4776 Richmond Street in Philadelphia on May 10, 2010, and the attempted robbery of a Wawa convenience store located at 4371 Richmond Street in Philadelphia on May 23, 2010. The defendant has moved to suppress evidence recovered on May 23, 2010, from a car in which he was a passenger and the identification of him from a photo array by a witness to the Bridesburg Pizza robbery that occurred on May 10, 2010. The Court held an evidentiary hearing on June 12, 2012. The Court will deny both aspects of the motion.[1]

---

[1] The defendant also moved to suppress a show-up identification of the defendant that occurred the night of May 23, 2010. The witnesses for this identification were not available on the day of the hearing. The Court will decide this

I.   Findings of Fact

The Court will separate the findings of fact into those that relate to the stopping of the car and seizure of the evidence from those that relate to the identification of the defendant.

A.   Stopping of the Car and Seizure of the Evidence

Officer Patrick Biles has been with the Philadelphia Police Department for eighteen years, and Officer Christopher Rommel for fifteen years. They currently are with the 15th District Patrol Unit. They were working on May 23, 2010, in uniform, in a marked radio patrol car on the 11 p.m. to 7 a.m. shift. At about 2 a.m., they received a radio call concerning an incident taking place at a Wawa near Gillingham and Richmond Streets. The call was for a man with a gun and/or a robbery in progress. They went to the Wawa where they talked to two store employees in the parking lot outside of the Wawa who told them about an incident that had transpired a few minutes before their arrival. They were at that location within a matter of minutes after receiving the radio call.

The information they received from the two employees was that a black male entered the store wearing a black jacket

aspect of the motion at a later date.

with very long dreadlocks, a Jamaican type hat — multi colored, and sunglasses.  The male employee, Jason Erb, told the police that the male had a gun in his right pants pocket.  Mr. Erb told the police that he had a brief conversation with this black male in reference to the daily newspaper and that the male then left the store.  The Wawa employees also said that they had received information from the Town Watch that there was a robbery at another location and to be on the look out for a male with dreadlocks and a Jamaican multi colored hat.

      While the officers were taking the information from the store employees, Officer Biles observed a dark color four door sedan traveling westbound on the 2800 block of Gillingham which borders the Wawa property.  He was 50 to 60 feet away from the car, and the car was going about 15 miles per hour.  Officer Biles was attracted to the vehicle initially because it was operating without headlights.  It is a violation of Pennsylvania's Motor Vehicle Code 4303A to drive in the Commonwealth at night with headlights off.  Secondly, he observed that the driver was a black male with braids.  Because the initial information was that the male had long dreadlocks, and dreadlocks can be confused with braids, Officer Biles thought that the driver may have come into the Wawa and that the officer should stop the car and investigate.

As they were following the vehicle, Officer Rommel, who was acting as the recorder, entered the tag information into the computer to conduct an NCIC DMV check. Everything was in order. At some point, Officer Biles, who was driving, activated the emergency lights and sirens in the radio patrol car and stopped the vehicle in front of 2864 Orthodox Street for investigation. After he stopped the vehicle, Officer Biles yelled out of his window that the occupant should shut the vehicle off. The driver immediately turned off the vehicle, took out his keys and placed them on the roof of the vehicle. The officer had not ordered the driver to put the keys on the roof.

As they got out of their vehicle, Officer Rommel went to the driver's side of the vehicle. He would normally go to the passenger side but because he did not see any passenger, he went to the driver's side. Officer Rommel had out his flashlight and shined it into the vehicle. At that time, Officer Biles noticed a person, who was later identified as the defendant, reclining all the way back in the passenger's seat. Officer Biles, therefore, went to the passenger's side. The defendant was in a laying down position. He was squirming around leaning to his left. Officer Biles saw through the rear window a wig with Jamaican hat and dreadlocks that matched the description by the witnesses at the Wawa. He removed Mr. Paris from the vehicle and

4

alerted Officer Rommel to the dreadlocks and hat. The wig and hat were on the floorboard behind the driver's seat.

Officer Rommel asked the driver, Christopher Hooks, for identification, license, registration and insurance. He began to get that information when Officer Biles said "Chris, back seat floor." Officer Rommel then noticed on the back seat floor there appeared to be braids with a multi colored hat. They had both people in the vehicle step out. He reached in and grabbed the hat with the braids and saw a gun that was inside that fell out. He recovered both of the items and both of the males were placed in handcuffs.

After the two occupants of the car were secured and evidence recovered, Officer Biles informed police radio of what had occurred. He asked for a marked patrol car to proceed to the Wawa to pick up the two store employees and bring them to the location to see if they could identify the male who was in the store. A car did pull up and Officer Biles was informed by radio that the defendant was identified as the person who was in the Wawa. Officer Biles does not know the name of the officer who brought the witness to the location. Mr. Paris was handcuffed standing on the highway in front of the police car. The officer who brought the witness utilized a 1/4 mile spotlight. The police cars have take down lights which illuminated the area in front of the vehicle very well. Officer Biles was on the left

5

hand side with Mr. Paris and Officer Rommel was on the right hand side of the car with Mr. Hooks.  They were standing side by side.

Officer Rommel saw the female witness in the police vehicle that came around for the potential ID.  He thought that the car was about 20 to 25 feet away for the ID.  His recollection is that both males were identified.  He does not recall where he got the information.

The two officers then secured the vehicle to hold it for a search warrant.  They had another officer come and sit with the vehicle until the tow squad could pick it up.  Mr. Paris and Mr. Hooks were transported to Northeast Detectives for processing.  The defendant's hair that night was cut very short as it was in court.

The defendant said during the stop that he did not know anything about anything.  The property receipt says that the police recovered sunglasses that evening but neither officer recalls doing so.

He issued a citation to Mr. Hooks for the traffic violation of driving without lights on at night.

B.  Identification With Respect to the May 10, 2010,
    Robbery of Bridesburg Pizza

Detective Robert Schill has been a detective for eighteen years.  He is currently assigned to Northeast Detectives where he has been for ten years.  On May 10, 2010, he was working

6

the 4 to 12 shift. He responded to a robbery at Bridesburg Pizza at 4776 Richmond Street. He learned that a male came in and pulled out a silver handgun and robbed the store of over $300. The person who committed the pizza store robbery wore a multi colored hat with different colors and dreadlocks. He interviewed the owner, Mr. Rothstein, and three other people who were in the store. Mr. Rothstein had handed the money to the robber. He also interviewed another witness who was around the corner.

On May 23, 2010, Detective Schill learned about an arrest after an incident at a Wawa in the same neighborhood where the pizza store is located on Richmond Street. He learned that two males were arrested, a silver gun was recovered, as well as a wig of dreadlocks with a multi colored hat attached to it.

As a result of getting that information, Detective Schill prepared a photo array. He had Mr. Rothstein and Melanie Righter, who was in the pizza store at the time of the robbery, come to Northeast Detectives to see if they could identify anyone.

He showed the photo array to Mr. Rothstein at 11:15 a.m. and Ms. Righter at 11:20 a.m. There were eight photos in the array. To prepare the array, he used a photo imager. He punched in the suspect, Mr. Paris, and dropped him down to a box that contained eight photos. The machine then picked similar images. He selected seven images that appeared similar to the

defendant and put them in the photo array.  The machine mixed up the pictures and generated the photo array.

The photos are displayed with two rows of four.  The defendant's picture is the first picture.  The Court reviewed the photo array and finds that all eight men have similar appearance and the photo array is not suggestive in any way.

When the detective showed Mr. Rothstein the pictures, he told him that the suspect may be in there but he may not be in there.  He told Mr. Rothstein to take his time and look at each one.  Mr. Rothstein looked at the photos and picked out photo #1 and said that "this looks like him."  Detective Schill asked him how much he would say it looks like him and Mr. Rothstein said 90% that he thought it was him.  Detective Schill did not suggest that Mr. Rothstein pick anyone.  The detective had no other conversations with him.  Mr. Rothstein wrote on the photo the percentage and signed his name.  He put the date and time on it as well.  No other witnesses were there at the time.  Ms. Righter was sitting out in the hallway on the bench.

Detective Schill said the same thing to Ms. Righter five minutes later when he showed her the photo array.  She could not identify anyone.  He tried to get in touch with everyone from the store and they were the only two people he could reach at the time.  It took less than a minute for Mr. Rothstein to identify the defendant.

Detective Schill did not show anybody else the photo because once someone is arrested for a robbery, they cannot show anyone else photos after that of people in custody.

Ben Rothstein testified at a preliminary hearing held on June 18, 2010, in the First Judicial District of Pennsylvania. The following findings of fact come from the transcript of the preliminary hearing that was introduced into evidence during the motion to suppress hearing.

Mr. Rothstein was working at approximately 8:00 p.m. on the night of May 10, 2010, at Bridesburg Pizza at 4776 Richmond Street in Philadelphia. He identified Mr. Paris during the preliminary hearing as a man who came in the front door of the pizza shop with a gun in his hand. The defendant cocked the gun, came to the cash register, pointed a gun at Mr. Rothstein's face and told him to empty the register. He gave the defendant a little over $300. The defendant was wearing dark glasses, a set of dreadlocks and a knit hat with rainbow colors knitted in the top of it. The gun was a silver 45 with black grips. The defendant marched everybody into the back room and then took off out the front door. During the incident, the defendant kept saying "Try me, I'll shoot you." He gave the robber the money reasonably quickly -- within seconds. The entire incident lasted about a minute and a half. The description he gave the police was black male, early 20s, about 5'8", approximately 160 lbs., a

little bit of scruff on his chin.  He also described the dreadlocks, the hat and the sunglasses and clothes that he was wearing.  He said that he could make an identification, and did so at a later time.

II.  Analysis

The defendant argues that the evidence seized from the car should be suppressed because it was the result of an illegal stop of the vehicle in which he was a passenger.  He argues that the officers lacked reasonable suspicion and probable cause to stop the car.  The Court disagrees and will deny the motion to suppress the evidence.  With respect to the photo array identification, the Court holds that under the totality of the circumstances, the Bridesburg Pizza owner's identification on May 23, 2010, of the defendant as the robber of the store was not the result of impermissible suggestion and was reliable.

A.   Suppression of the Evidence

In Terry v. Ohio, 392, U.S. 1 (1968), the Supreme Court held that a police officer may conduct a warrantless stop if specific and articulable facts, together with all rational inferences, suggest that the suspect may be involved in criminal activity.  The government concedes that stopping a vehicle and its occupants is a seizure under the Fourth Amendment, as indeed

it is.  Looking at the totality of the circumstances, the Court determines that there was a reasonable suspicion to stop the car.[2]

The police had just been told that someone had entered the Wawa at 2:00 a.m. wearing long dreadlocks and a multi colored Jamaican style hat.  One of the witnesses also told the police that the person appeared to have a gun in his pocket or in his waistband.  The witness was suspicious because the person who came into the store asked for a newspaper and then abruptly left the store.  In addition, the employees of the Wawa had been told to be on the look out for someone with dreadlocks and a multi colored hat who robbed a Bridesburg pizza shop in early May. While they were getting this information, the officers saw a car passing by driven by a man with braided hair, driving without his headlights on, and slowly at 2:00 a.m.  In view of the time of day, the fact that the defendant had braids and braids can be described as dreadlocks, the man was driving slowly in the middle of the night without his headlights on, there was reasonable suspicion for the police to stop the vehicle.

---

[2] The government also argues that there was probable cause to stop the car because the driver was violating the traffic laws by driving at night without the headlights on. Although it is correct that the driver was violating the traffic laws, at least one of the officers conceded that he would not have stopped the car as a result of the traffic violation.  The Court, therefore, does not base its decision on the traffic violation.  The Court, however, does consider the fact that the car was being driven without lights in the middle of the night as contributing to reasonable suspicion.

11

B. <u>The Photo Array Identification</u>

The photo array shown to Mr. Rothstein by Detective Schill was not suggestive in any way. All eight men looked similar, and there was nothing drawing attention to the defendant. The photo array was prepared in a proper way: by having the computer select similar people and then mixing the photos.

Nothing that Detective Schill did during the identification procedure was impermissible or suggestive. He told the witness that the witness may or may not see the suspect and nothing more. When the witness picked someone out, the detective asked him how sure he was and the witness said "90 percent." The detective then had the witness sign the photo and write "90 percent." There was nothing suggestive or improper about the photo identification.

In addition, Mr. Rothstein's testimony at the preliminary hearing demonstrates that his identification was not so unreliable that it should be suppressed. He gave a detailed identification of the robber to the police and interacted with the robber. The motion to suppress the identification is denied.

An appropriate order follows.